UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDUL TAWWAB,

       Petitioner,

v.

       Case No. 1:07-cv-192
       Hon. Janet T. Neff

KENNETH MCKEE,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

This case arises from a carjacking which occurred on October 18, 2000. Petitioner was arrested on or about December 6, 2000. State Court docket sheet (docket no. 19). The court ordered a competency evaluation on December 19, 2000. *Id.* On April 18, 2001, prior to the preliminary examination, a competency hearing was held in the 36th District Court before Judge Leonia J. Lloyd. Competency Hear. Trans. (docket no. 20). At the hearing, the parties stipulated to the competency report, which indicated "that [petitioner] is competent." *Id.* at 3. Based on the report and the stipulation, the court found that petitioner was competent. *Id.* The docket sheet reflected this finding, with the following notation from April 18, 2001, "defendant competent to stand trial." State Court Docket Sheet. The preliminary examination was waived on April 27, 2001 and petitioner was bound over to the Wayne Circuit Court. *Id.*

On May 11, 2001, petitioner appeared before Wayne Circuit Court Judge Michael J. Hathaway, at which time he was arraigned. Arraignment Trans. at 3 (docket no. 21). Petitioner waived a formal reading of the charges and stood mute. *Id.* The court entered a not guilty plea and released petitioner on a $50,000.00 bond. *Id.*

The state court docket sheet reflects a filing on June 29, 2001, for "competency for Miranda rights," which was "heard and granted" with the bond continued. The state court docket sheet reflects that on July 27, 2001, there was a "final conf," with "bond continued," and a jury trial scheduled for January 28, 2002. The trial did not proceed on that date. Rather, the state court docket sheet reflects that a capias was issued against petitioner on January 28, 2002.[1] Petitioner appeared at a capias arraignment before Wayne Circuit Court Judge Karen M. Fort Hood on February 25, 2002. Capias Arraign. Trans. at 3 (docket no. 22). At this time, petitioner's counsel advised the court that, "I don't believe my client has any reasonable explanation for not appearing for trial other than he's just not guilty of this matter and probably was quite afraid." *Id.* Petitioner stated that he was "at the Harper Hospital" and "seeking some help." *Id.* at 4. Judge Hood set aside the capias, stating "I'm going to remand the defendant for purposes of a transfer to the docket of the Honorable Maggie Williams Drake" for purposes of a March 1, 2002 pretrial. *Id.* at 4-5.

The state court docket sheet reflects that the proceeding was adjourned "at the request of the court" and that a final conference was held on April 5, 2002.[2] The state court docket sheet reflects that a retained attorney, Mr. Dubose, entered an appearance on behalf of petitioner on July

---

[1] The Rule 5 materials do not include transcripts of the hearings held on June 29, 2001, July 27, 2001, or January 28, 2002.

[2] The Rule 5 materials do not include a transcript of the hearing held on April 5, 2002.

24, 2002 and that the bond was continued. The state court docket sheet further reflects that a "pretrial" was held on September 13, 2002, at which time petitioner's bond was continued.[3]

On October 18, 2002, the Wayne Circuit Court Judge Maggie Drake considered petitioner's motion regarding his competency to stand trial (the trial being scheduled for October 30, 2002). Motion Trans. (Oct. 18, 2002) (docket no. 21).[4] At the hearing, Judge Drake heard conflicting reports regarding petitioner's competency. Judge Drake noted that there was a report of a waiver of *Miranda* rights dated July 23, 2002, by Anthony Keeling, who opined that petitioner was capable of understanding the nature and object of the proceedings, was aware of his position as a defendant in the proceedings, was capable of assisting his defense in a rational and reasonable manner, that the delay, length or arduousness of a trial would not be expected to significantly alter petitioner's mental capacity. *Id.* at 55-59. The judge observed the opinions of a live witness, Dr. Miller, who did not give a diagnosis while on the stand because petitioner would not cooperate, but stated in a report that petitioner was "at best marginally competent to stand trial at this time" and that petitioner's mental illness was interfering with his capacity to assist counsel in the preparation of a defense. *Id.* at 59-60. Judge Drake, however, noted that Dr. Miller testified that he was "on the side of the defense," testimony which the judge found "offensive to me." The court expressed a desire to obtain a truly independent evaluation:

> I need an independent evaluation so that I can make a clear, rational reasonable decision. I have conflicting reports here. And I'm not in [a] position to make a determination. I'm not a psychiatrist. It could be anything. It could be that

---

[3] The Rule 5 materials do not include transcripts of the hearings held on July 24, 2002 and September 13, 2002.

[4] Respondent included three transcripts as part of Rule 5 materials identified as docket no. 21: the May 11, 2001 arraignment; the February 25, 2002 capias arraignment; and the October 18, 2002 competency hearing.

3

[petitioner is] avoiding. It could be that he has a mental illness. I will not make a ruling today. I'm going to order a clear independent evaluation from someone who is not on the side of the prosecution and not on the side of the defense. That's the only way I can make a decision here. . . .

I need to find someone who can give the Court an evaluation that is not clearly slanted or is going one way or the other.

*Id.* at 60-61.

The matter was scheduled for a final conference on November 26, 2002 before yet another judge, Wayne Circuit Court Judge Carole Youngblood. Plea Trans. at 3 (docket no. 26). After an "off the record" discussion at the bench between the judge and counsel, petitioner's counsel announced that petitioner was prepared to enter a plea. *Id.* Under the plea agreement, petitioner would plead guilty to the carjacking and felony firearms counts, and the prosecutor would dismiss the armed robbery count. *Id.* at 3-4. In addition, under a *Cobbs* evaluation[5], the court informed petitioner that it would sentence him "towards the low end of the guidelines." *Id.* at 4.

After the court accepted the plea, defense counsel, Mr. Dubose, withdrew petitioner's pending motion for a competency hearing:

> MR. DUBOSE: Your Honor, just for the record we withdraw our motion for competency at this juncture.
>
> THE COURT: Okay. The motion's dismissed.
>
> MR. DUBOSE: Thank you.

*Id.* at 11.

---

[5] The court's statement refers to *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993). In this case, "the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Wright v. Lafler*, 247 Fed.Appx. 701, 703, fn. 1 (6th Cir. 2007).

At his sentencing on December 17, 2002, petitioner's counsel advised the court that he was taking medication for schizophrenia, had been hospitalized in the past and requested that his filed be marked to get "some additional mental health treatment." Sent. Trans. at 3-4 (docket no. 25). The court changed the presentence report "to say that [petitioner] stated he does have mental problems and is diagnosed as schizophrenic and takes Xyprexia." *Id.* at 4. After determining that the sentencing guidelines range was 21 to 35 months, the court sentenced petitioner to a term of imprisonment for 21 months to 15 years on Count One (carjacking). *Id.* at 5. As to Count Two (felony firearm), the court sentenced petitioner to a consecutive prison term of two years. *Id.* at 5-6. Finally, the court advised petitioner that he had "42 days from today's date to seek to appeal your plea and sentence to a higher court." *Id.* at 6. There is no record that petitioner filed an appeal of his convictions and sentence.

The state court docket sheet reflects that petitioner filed a motion for relief from judgment on or about September 21, 2005 which was adjourned to March 9, 2006. The state court docket sheet reflects that the court assigned counsel on September 29, 2005. The state court docket sheet also reflects that on March 9, 2006, the court filed an order for a competency evaluation. On May 10, 2006, Judge Youngblood held a post-conviction competency hearing. Motion Trans. (May 10, 2006) (docket no. 26). Petitioner was not present. *Id.* The matter was adjourned to allow the preparation of an expert report. *Id.* at 4.

The competency hearing resumed on June 8, 2006. Motion Trans. (June 8, 2006) (docket no. 27). Petitioner's new counsel, Mr. Kinney, advised the court that he had a copy of reports from the Forensic Center and by Dr. Miller, and was willing "to stipulate to those two reports that he is presently competent." *Id.* at 3. The prosecutor also agreed to stipulate to the reports. *Id.*

5

at 4. The court accepted the parties' stipulation and, based on the reports, found that petitioner was "competent to stand trial or proceed with this case at this time." *Id.* Petitioner's counsel then argued that Judge Youngblood should allow petitioner to withdraw his plea because the Dr. Miller's earlier report found petitioner not competent to stand trial. *Id.* at 5-6. The matter was adjourned to a later date. *Id.* at 16.

Counsel argued the motion to withdraw the guilty plea on August 7, 2006, at which time Judge Youngblood stated that she would issue "a written decision very shortly." Motion Trans. (Aug. 7, 2006) (docket no. 28). On August 11, 2006, Judge Youngblood entered an "Order of conditional grant of [petitioner's] motion to withdraw his guilty plea." *See* docket no. 29. This order contains the judge's summary of the proceedings and forms the basis for petitioner's claims in this habeas action. For that reason, the court will set forth the order in its entirety:

> This matter comes before the Court on the defendant's post conviction motion on the issue of competency to plead guilty, and after due consideration of the court file, transcripts, briefs, and oral arguments, the court finds as follows:
>
> The defendant raised the issue of whether he was competent to make a knowing and voluntary guilty plea in light of a psychological evaluation that found him to be incompetent to stand trial.
>
> The defendant was arrested and charged with carjacking, armed robbery and felony firearm on December 6, 2000. From the time of his arrest he was treated as a psychiatric patient. The defendant was held in the psychiatric clinic of the jail where the psychiatric staff evaluated him and prescribed anti-psychotic medication.
>
> On December 19, 2000 he was ordered to undergo a psychiatric evaluation to determine whether he was mentally competent. The evaluation apparently was not conducted. On February 8, 2001 he was again ordered to undergo a psychiatric evaluation for competency. On April 18, 2001, the district court held he was competent and set a preliminary examination date for April 26, 2001. The defendant was bound over for trial on April 27, 2001. From June 13, 2001 through June 22, 2001 the defendant was admitted as in-patient at Harper Hospital for psychiatric treatment. He also had a history as an out-patient with Eastwood Clinics. On June 29, 2001, the defendant was ordered to be examined for competency to voluntarily

6

waive his rights and make a confession to the authorities. On August 26, 2002 the defendant was again ordered to be examined by an independent psychiatric examiner for competency to stand trial. The independent examiner's report dated September 19, 2002 found that the defendant was incompetent to stand trial but that treatment may render him competent within the 15-month statutory period. The circuit court file notations reveal several competency hearings scheduled but each of them appeared to have been adjourned without resolution of the issue.

On October 18, 2002 a competency hearing was held before the Hon. Maggie Drake. The defendant's mother testified about his history of unusual behaviors and attempts to get her son mental health treatment. Forensic psychologist Dr. Steven R. Miller testified that he examined the defendant and found that due to the defendant's mental illness he would be unable to assist his attorney with defending against the criminal charges. Dr. Miller was unable to give a diagnosis due to the defendant's uncooperative behavior which he attributed to the mental illness. Dr. Miller testified that the defendant understood that he was being prosecuted for a crime, and he understood the role of the judge, the prosecutor and the defense attorney, however, the defendant's psychiatric history reveals a significant mental illness that interferes with his ability to rationally assist his attorney in his own defense.

The trial court stated that it was in possession of a Center for Forensic Psychiatry report previously ordered by another judge that found the defendant was competent to stand trial. The trial court questioned Dr. Miller about his forensic practice and determined that Dr. Miller was "on the side of the defense" and could not be considered an independent evaluator. Judge Drake adjourned the competency hearing without making a ruling on competency and ordered another independent evaluator to assist the court in a decision whether the defendant was mentally ill or simply avoiding responsibility. No evaluation was done and no report was issued.

Five weeks later the defendant pleaded guilty to carjacking and felony firearm on November 26, 2002 before this court. As of that date this trial court had assumed the docket of Judge Drake to help bring matters within required time standards. This court was not informed of the facts stated above when it agreed to accept the defendant's guilty plea. This court was not informed that the issue whether the defendant was competent to stand trial was never ruled on by the prior judge.

The prosecutor argues that the defendant's trial attorney [sic] trial strategy was that the defendant would benefit most from the plea deal proposed by the prosecutor and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," referring to *Strickland v Washington*, 466 U.S. 668, 689 (1984). The prosecutor's argument fails in light of the constitutional dimensions of the error of accepting a guilty plea from

7

a person who had been found incompetent by mental health experts and whose competency to make a guilty plea had not been finally adjudicated and ruled on by the trial court. *Dusky v United States* , 362 US 402, 80 SCt 788, 789 (1960); *Jackson v Indiana*, 406 US 715, 92 Sct 1845 (1972); *People v Bowman*, 141 Mich App 390, 367 NW2d 867 (1985); *People v. Belanger*, 73 Mich App 438, 252 NW2d 472 (1977); *People v. Matheson*, 70 Mich App 172, 245 NW2d 551 (1976)[;] MCL 330.2020(1).

The test of mental competency at the time of trial or the entering of a plea in a criminal case is that the accused have ["]sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.["] *Dusky v United States* , 362 US 402, 80 SCt 788 [] (1960). The court rule requirement that the court make an independent inquiry into the voluntariness of the plea combined with the ongoing nature of competence make it clear that the court cannot merely adopt the prior finding of competence. *People v. Matheson*, 70 Mich App 172, 182, 245 NW2d 551 (1976); MCR 6.302. Where defendant has been examined but no competency hearing has been held, the court may not accept defendant's plea without a hearing to determine his competence. *People v Lucas*, 47 Mich App 385, 209 NW2d 436 (1973). A defendant may raise the court's failure to make such a determination only if evidence of incompetence is present. *People v Blocker*, 393 Mich 501, 227 NW2d 767 (1975); *People v Lucas*, 393 Mich 522, 527-529, 227 NW2d 763 (1975).

In this case there is record of the defendant's incompetence but no final court determination whether the defendant was competent to stand trial or make a knowing and voluntary plea. The defendant was found incompetent to stand trial by more than one independent mental health professional appointed by the court.[6] This court accepted the defendant's guilty plea without being informed that the prior court had failed to rule whether the defendant was competent. The error requires reversal.

Due to the aforementioned facts, the apparent failure of the court to decide whether the defendant was competent before accepting the defendant's guilty plea [sic] the court HEREBY ORDERS that the defendant's motion to withdraw his guilty plea SHALL BE AND IS CONDITIONALLY GRANTED on the provision that the defendant is found competent to make a knowing and understanding decision to withdraw his guilty plea.

---

[6] The state court proceedings as developed in this court do not reflect that "more than one independent mental health professional" appointed by the Wayne Circuit Court found petitioner to be incompetent to stand trial. As far as Dr. Miller's opinion was concerned, Judge Drake did not accept his opinion due to the doctor's testimony that he was "on the side of the defense." Furthermore, Dr. Miller's report did not conclude that petitioner was incompetent to stand trial, but found him "marginally competent" to stand trial.

*People v. Abdul Tawwab*, No. 01-005028-01 (Third Cir. Ct. Wayne Co., Mich. Aug. 8, 2006) (docket no. 29) (footnote omitted). Judge Youngblood redated the order to August 11, 2006, the date that the parties became aware of it. Motion Trans. (Aug. 14, 2006) (docket no. 30).

The matter came for hearing again on August 14, 2006, at which time the prosecutor requested a stay pending appeal. *Id.* at 4. Judge Youngblood noted that there was no order finding petitioner competent to stand trial. *Id.* at 5. The prosecutor advised the judge of the June 8, 2006 hearing. *Id.* The judge located the order, which found petitioner competent on June 8, 2006, denied the prosecutor's motion to stay the proceedings, and set the matter for trial on November 15, 2006. *Id.* at 7-8.

The government filed an emergency appeal of this order, which resulted in the following decision from the Michigan Court of Appeals:

> The Court orders, pursuant to MCR 7.205(D)(2), that the trial court's August 11, 2006 order conditionally granting defendant's motion to withdraw his guilty plea is REVERSED. Because defendant moved to withdraw his guilty plea more than six months after it was entered, he was only entitled to relief as provided in subchapter 6.500 of the court rules. See MCR 6.310(C). Pursuant to MCR 6.508(D)(3), to be entitled to relief from judgment, defendant must establish both "good cause" and "actual prejudice" as defined therein. In this case, defendant claims that relief is warranted because, at the time he entered his guilty plea, the trial court had not resolved his motion for a determination of his competency to stand trial. However, at the November 26, 2002 hearing on this matter, defendant both entered his plea and withdrew his motion for a determination of competency. The fact that the plea was entered moments before the motion was withdrawn by defense counsel and dismissed by the trial court is of no consequence since entry of the plea and withdrawal of the motion were, essentially, a single event. To provide defendant with relief from his guilty plea simply because defense counsel failed to request that the motion be withdrawn before defendant entered the plea would exalt form over substance. Defendant has failed to establish entitlement to relief from judgment under MCR 6.508(D)(3), and the trial court abused its discretion in concluding otherwise.
>
> The motion for stay is DENIED.

9

> This case is REMANDED to the trial court for further proceedings consistent with this order. We do not retain jurisdiction.
>
> This order shall have immediate effect. MCR 7.215(F)(2).

*People v. Abdul Tawwab*, No. 273694 (Nov. 9, 2006).[7]

The Michigan Supreme Court did not review the Court of Appeals order, having rejected petitioner's application for leave to appeal on January 5, 2007. Corbin R. Davis Aff. (docket no. 31).[8]

Petitioner filed this habeas action on approximately two months later, on February 28, 2007. He set forth three issues in his amended petition (in his words):

I. Whether petitioner's rights to due process was denied as trial court fail to order competency and criminal responsibility evaluations prior to plea.

II. Whether petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel.

III. Whether Mich. Ct. of Appeals decision is contrary to Federal law and indistinguishable facts as held by Supreme Court.

Amended Pet. (docket no. 7).

### II. Statute of Limitations

### A. Legal standard

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and

---

[7] The Rule 5 materials received from the Michigan Court of Appeals do not reflect that the prosecutor filed a motion to stay in that court. *See* docket no. 29.

[8] In his affidavit, Corbin R. Davis, Clerk of the Michigan Supreme Court stated that "I have searched the files and records of the Michigan Supreme Court and find that Michigan Court of Appeals Docket no. 273694 was a late application (beyond 56 days) and rejected by this Court on January 5, 2007." *See* docket no. 31.

Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 (AEDPA). Prior to enactment of the AEDPA, there was no defined period of limitation for habeas actions. Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured, i.e., "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In addition, the running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

### B. Petitioner's action is untimely

Here, petitioner did not file an appeal of his conviction and sentence. Under MCR 7.205(F)(3), petitioner had one year in which to file a delayed application for leave to the Michigan Court of Appeals. Therefore, petitioner's conviction became final on December 18, 2003, when the time for filing his delayed application for leave to appeal expired. Pursuant to § 2244(d)(1)(A), petitioner had one year, until December 18, 2004, to file his habeas petition. However, petitioner did not file this habeas action until February 28, 2007, more than two years after the limitations period expired. *See* docket no. 1.

In his petition, Tawwab stated that he submitted a timely notice of appeal and for appointment of appellate counsel "within the 42 days" after his sentencing and that both the "clerk" and "court" ignored it. *See* docket nos. 1 and 7. There is no record of any such filings in either the trial court or the Michigan Court of Appeals. While the one-year limitations period would be tolled while petitioner pursued his Rule 6.500 motion, petitioner did not file this motion until September 2005, approximately nine months after the limitations period expired.[9]

---

[9] Petitioner suggested that the trial court's alleged failure to appoint appellate counsel to pursue an appeal in 2002 somehow acted to toll the filing of his habeas action. *See* docket nos. 1 and 7. For this reason, in an abundance of caution, the court's order to file answer directed respondent to specifically address "whether the petition was timely under the statute of limitations in light of the Supreme Court's decision in *Halbert v. Michigan*, 545 U.S. 605 (2005)." Respondent did not address the issue. Nevertheless, the Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). The court's concern arose from arguments raised in *Inglesias v. Davis*, No. 2:06-cv-247, 2007 WL 108303 (W.D. Mich. Jan. 9, 2007), in which the court rejected the petitioner's "creative" argument that he was entitled to tolling of the one-year limitations period for because the *Halbert* decision (which struck down Michigan's law denying indigent defendants court appointed attorneys to appeal their convictions based on guilty pleas) removed an unconstitutional impediment (i.e., the failure to appoint appellate counsel) to his ability to bring a habeas action within one-year. *See* 28 U.S.C. § 2244(d)(1)(B) (the one-year limitations period may run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"). Any potential timeliness issue, however, was settled earlier this

### C. There is not basis for equitable tolling

The one-year limitations period applicable to § 2254 is a statute of limitations subject to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Jurado v. Burt,* 337 F.3d 638, 642 (6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See Solomon v. United States,* 467 F.3d 928, 933 (6th Cir. 2006); *Jurado*, 337 F.3d at 642; *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Dunlap*, 250 F.3d at 1008-009. A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Lawrence*, 127 S. Ct. at 1085 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner contends that he was unaware that he could file a pro per application for leave to appeal to the Michigan Court of Appeals. *See* docket no. 7. The fact that petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations for a certain period does not warrant tolling. *See Allen*, 366 F.3d at 403-04; *Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001) (citing *United States v. Baker*, 197 F.3d 211, 218-19 (6th Cir. 1999)); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("ignorance of the law, even for an incarcerated *pro se*

---

year by the Sixth Circuit which, in affirming *Inglesias*, stated that the petitioner's *Halbert* argument "offers no basis for sidestepping the one-year bar." *Inglesias v. Davis*, No. 07-1166, 2009 WL 87574 at *1 (6th Cir. Jan. 12, 2009).

petitioner, generally does not excuse [late] filing."). In addition, petitioner's claim that he suffered from a mental deficiency is insufficient to support equitable tolling. Mental incompetence *per se* is not a reason to toll the statute of limitations in a habeas action. *McSwain v. Davis*, 287 Fed. Appx. 450, 456 (6th Cir. 2008). In this case, petitioner dropped his competency challenge when he pled guilty. He has presented no evidence that mental illness played a role in his failure to file a timely habeas petition. *See Holland v. Florida*, 539 F.3d 1334, 1339, fn 7 (11th Cir. 2008) (in rejecting petitioner's claim for equitable tolling, court observed that while petitioner claimed to have a "long history of mental illness," the petitioner did not explain how the history of mental illness had a material effect on his failure to file a timely habeas petition). In this regard, the court notes that petitioner was twice found competent to stand trial in separate court hearings on April 15, 2001 and June 8, 2006, and withdrew his competency motion on a third occasion (October 18, 2002). No court has found him incompetent to stand trial. Furthermore, these findings are not without support. Apparently at least four medical reports have found petitioner competent, while the report of a defense doctor found him "marginally competent." Moreover, petitioner's mental illness did not prevent him from pursuing post-conviction remedies in the state courts. For all these reasons, there is no basis for finding that petitioner is entitled to equitable tolling of the statute of limitations.

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day,* 547 U.S. at 210. This report and recommendation shall therefore serve as notice that the District Court may dismiss petitioner's application for habeas corpus relief

14

as time-barred. The opportunity to file objections to this report and recommendation constitutes petitioner's opportunity to be heard by the District Judge.

## IV.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: November 13, 2009                         /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).